AUDITOR GENERAL *v.* R. B. SMITH MEMORIAL HOSPITAL
ASSOCIATION.

1. TAXATION—CHARITIES—EXEMPTIONS.

   Whether or not claimed exemption from taxation will be granted
   to an organization claiming to be a charitable corporation
   depends upon whether it is a charitable one and whether the
   property sought to be exempted is being devoted to charitable
   purposes.

2. SAME—NONPROFIT CORPORATIONS—PUBLIC WELFARE—EXEMPTIONS.

   Generally any body not organized for profit which has for its
   purpose the promotion of the general welfare of the public,
   extending its benefits without discrimination as to race, color,
   or creed, is a charitable or benevolent organization within the
   meaning of the tax exemption statutes (1 Comp. Laws 1929,
   § 3395, subd. 4).

3. SAME—CONSTRUCTION OF STATUTES—EXEMPTIONS—CHARITIES—
INCOME PROPERTY.

   Since the rule that exempting provisions of tax statutes are to
   be construed strictly is generally applied, in the absence of a
   specific charter or statutory provision, no property owned by
   a charitable institution, but held as a source of income, can
   escape taxation, although the fact that a charge is made for
   benefits conferred against those able to pay does not detract
   from the charitable character of an organization (1 Comp.
   Laws 1929, § 3395, subd. 4).

4. SAME—CHARITIES—TORT LAW DEFINITIONS—CONSTRUCTION OF
EXEMPTION PROVISIONS.

   The definition of a charitable institution for the purposes of tort
   law is not conclusive in a tax exemption case as tax exemptions
   are strictly construed (1 Comp. Laws 1929, § 3395, subd. 4).

5. SAME—HOSPITALS—EXEMPTIONS—CHARITIES—CHARGES FOR SERV-
ICES.

   Real property of hospital association is exempt from taxation on
   ground it is a charitable institution when the charges collected

for services are not more than are needed for its successful maintenance (1 Comp. Laws 1929, § 3395, subd. 4).

6. SAME—HOSPITAL—SURPLUS—EQUIPMENT—EXEMPTION.

Real estate, transferred to public nonprofit hospital association by deed containing reverter clause in case property ceased to be used for public, community hospital purposes, used by the association for hospital in which all patients were charged for services, no collections made from indigents, county and afflicted children treated at less than cost and no poor person refused admittance because of inability to pay, was exempt from taxation as a charitable institution even though in some years, instead of the usual deficit, a small surplus was shown which was used to supply needed equipment and not for payment of dividends (1 Comp. Laws 1929, § 3395, subd. 4).

7. COSTS—EXEMPTION OF HOSPITAL FROM TAXATION—PUBLIC QUESTION.

Upon affirmance of decree declaring real property used for public hospital purposes exempt from taxation while so used, no costs are allowed, a public question being involved (1 Comp. Laws 1929, § 3395, subd. 4).

Appeal from Gratiot; Searl (Kelly A.), J. Submitted January 2, 1940. (Docket No. 26, Calendar No. 40,263.) Decided April 1, 1940.

Petition by George T. Gundry, Auditor General of the State of Michigan, for the sale of certain land for taxes. Objections by R. B. Smith Memorial Hospital Association, a Michigan nonprofit corporation. Decree for defendant. Plaintiff appeals. Affirmed.

*Thomas Read,* Attorney General, *Edmund E. Shepherd,* Assistant Attorney General, *Robert L. Arnold,* Prosecuting Attorney, and *Paul R. Cash,* City Attorney, for plaintiff.

*Charles H. Goggin,* for defendant.

BUSHNELL, C. J.    This is an appeal from a decree of the circuit court that the real property owned

and used by defendant R. B. Smith Memorial Hospital Association of the city of Alma is exempt from taxation. The auditor general claims that the defendant's hospital is not a charitable institution within the meaning of the fourth paragraph of 1 Comp. Laws 1929, § 3395 (Stat. Ann. § 7.7). Although organized as a nonprofit corporation, defendant charges all patients for its services, but does not collect from the indigent. The testimony shows that there was an excess of revenue over costs during certain periods and a deficit during others, which was met in part by donations. Patients who were financially able paid the full rate charged. County patients and afflicted children were treated at less than cost, and no poor person has ever been refused admittance or treatment because of his inability to pay. The uncollected accounts of such patients approximate $3,500. Surplus, when available, has been used for new equipment and additions to the hospital. No dividends have ever been paid to, or expected by, the members of the nonprofit corporation.

The generally accepted rule as to exemption from taxation of charitable corporations is stated in 34 A. L. R. at page 635:

"The determination of the exemption in a particular case seems to depend, in the last analysis, upon two things: First, whether the organization claiming the exemption is a charitable one; and, second, whether the property on which the exemption is claimed is being devoted to charitable purposes. In general, it may be said that any body not organized for profit, which has for its purpose the promotion of the general welfare of the public, extending its benefits without discrimination as to race, color, or creed, is a charitable or benevolent organization within the meaning of the tax exemp-

tion statutes. In determining whether the property is being devoted to charitable purposes within the meaning of the statute, the rule that tax exemptions are to be construed strictly is generally applied, with the result that, in the absence of a specific charter or statutory provision, no property owned by a charitable institution, but held as a source of income, can escape taxation, although the fact that a charge is made for benefits conferred, against those who are able to pay, in no way detracts from the charitable character of an organization.''

Annotations on the subject follow this statement.

The question of when a hospital is a charitable organization has been presented in *Downes* v. *Harper Hospital,* 101 Mich. 555 (25 L. R. A. 602, 45 Am. St. Rep. 427); *Pepke* v. *Grace Hospital,* 130 Mich. 493; *Bruce* v. *Ford Hospital,* 254 Mich. 394. It must be noted, however, that in those cases the definition of a charitable institution was for the purposes of tort law and is not conclusive in a tax exemption case as tax exemptions are to be construed strictly. The definition applicable to tax matters is stated in *Michigan Sanitarium & Benevolent Ass'n* v. *City of Battle Creek,* 138 Mich. 676. See, also, *Attorney General* v. *Common Council of Detroit,* 113 Mich. 388. In the *Battle Creek Case* the court said:

''Such a corporation is sufficiently charitable to entitle it to the privileges of the act when the charges collected for services are not more than are needed for its successful maintenance.''

The court preceded this statement with the following:

''The contention of defendant that plaintiff did not occupy this property for the business and purposes specified in the act under which it is incorporated is based upon the claim that the business there

carried on by plaintiff was not the charitable business which the statute contemplated. Plaintiff used the property for a hospital in which it treated sick and infirm persons. Some of these persons were treated free, some at reduced rate, but apparently most of them paid a regular schedule of prices fixed by plaintiff's management. The total receipts were less than the total disbursements. How. much of those total disbursements were used for improvements we are not informed. But as this was a matter defendant could have made clear had it chosen, we have no right to assume that any of these disbursements were illegitimate. At least, it may be inferred that the charges collected from patients were not larger than were necessary to the successful maintenance of the institution. Nor is there any testimony from which it may be inferred that there was any unjust discrimination in making those charges. * * * It is obvious from this testimony that we cannot say that a verdict should have been directed in defendant's favor without holding that a hospital organized under the law in question cannot collect from patients treated by it sufficient funds for its proper maintenance. If we so hold, we declare that persons who dedicate a hospital to the public must pay taxes on that hospital unless they maintain the same from their private means. The act contains nothing to warrant such a holding.''

This rule, when applied to the facts in the instant record, requires the conclusion that the trial judge was right when he said:

''This is an eleemosynary institution. No one ever received a dollar from dividends. Nobody ever expects to get dividends. The stock isn't worth a cent on a dollar; never will be, none of those hospital stocks are. The people in the community usually make heavy gifts, especially the women, every year, to carry on the hospital. They couldn't carry them on if it wasn't for that.

"So I determine this is a tax-exempt institution, and the objection is sustained.

"The argument has been made here that the court ought to put it on the basis of being exempt one year and not exempt another year. That would be absurd. They might make considerable money some one year. The next year they might have considerable losses; machinery might break down or wear out and they would have to replace it; and if you would undertake to bob back and forth and call it tax exempt one year and not exempt another year, you would get into all sorts of trouble. That wouldn't be the rule. The rule is what is this from year to year, is this operated for the benefit of the members or for the benefit of the community. There isn't any question about what this is, and I am surprised that the city of Alma would want to tax it. I would think they would want it maintained as a benefit to their city."

The building and land were transferred to defendant by deed which provided for reverter in case the property ceased to be used for public, community hospital purposes. The community subscribed approximately $24,000 to equip the hospital and since then has made other voluntary contributions. It is a public, not a private hospital. It is maintained without gain, profit or advantage to anyone. It does not lose its charitable character even though in some years, instead of the usual deficit, it shows a small surplus which is used to supply needed equipment.

The decree is affirmed, without costs, the question being a public one.

Sharpe, Potter, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.