GULL LAKE BIBLE CONFERENCE ASSOCIATION *v.*
TOWNSHIP OF ROSS.

1. TAXATION—EXEMPTION FROM PROPERTY TAXES—CHARITABLE CORPORATIONS.

Party claiming an exemption from property taxes under the general property tax law for a library, benevolent, charitable, educational or scientific institution must be incorporated under the laws of this State and the exemption claimant must own and occupy the property for the purposes for which it was incorporated as such a corporation (CLS 1956, § 211.7, subd 4).

2. SAME—EXEMPTION FROM PROPERTY TAXES—CHARITABLE CORPORATIONS.

Nonprofit corporation was properly held a charitable organization entitled to exemption from property taxes of property it occupied and used for the purposes of the corporation, where it is shown that it was organized in 1920 to promote and conduct gatherings at all seasons of the year for the study of the Bible and for inspirational and evangelistic addresses, practiced no discrimination as to race, creed or color and, aside from modest salaries paid to necessary employees, gave no one any pecuniary benefit from its operation (CLS 1956, § 211.7).

3. STATUTES—CONSTRUCTION—EXEMPTION FROM TAXES.

Statutes providing for exemptions from taxes are strictly construed.

4. TAXATION—EXEMPTIONS—CHARITABLE CORPORATIONS—INCOME.

Property held by a charitable organization as a source of income cannot escape taxation under the general property tax law, but the fact that a charge is made for benefits conferred, against those who are able to pay, in no way detracts from the charitable character of an organization (CLS 1956, § 211.7).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation §§ 539–545.
[2] 51 Am Jur, Taxation § 601.
[3] 51 Am Jur, Taxation § 524.
[4, 5] 51 Am Jur, Taxation § 608.
[5] 51 Am Jur, Taxation §§ 617, 618.

5. SAME—EXEMPTIONS—CHARITABLE CORPORATIONS—BIBLE STUDY GATHERINGS—INCOME FOR LIVING, RECREATIONAL AND PARKING FACILITIES.

Plaintiff nonprofit corporation, organized in 1920 to promote and conduct gatherings at all seasons of the year for the study of the Bible and for inspirational and evangelistic addresses, was entitled to exemption from property taxes for realty used by it for furnishing living accommodations, recreational facilities, parking facilities and other services connected with the gatherings even though income approximating the cost thereof to plaintiff is derived therefrom (CLS 1956, § 211.7).

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DISALLOWANCE OF TAX EXEMPTION TO CHARITABLE CORPORATION—FAILURE TO APPEAL.

No consideration is given to protested taxes on vacant lots and grocery-store premises owned by plaintiff charitable corporation, not given tax exemption to it by the trial court, where plaintiff has not appealed from such disallowance (CLS 1956, § 211.7).

7. COSTS—PARTIAL EXEMPTION FROM PROPERTY TAXES—CHARITABLE CORPORATIONS.

No costs are allowed on appeal in action to recover taxes paid under protest by charitable corporation where judgment of allowance of part of the taxes is affirmed, no appeal from disallowance of exemption as to all taxes having been taken by plaintiff (CLS 1956, § 211.7).

Appeal from Kalamazoo; Sweet (Lucien F.), J. Submitted October 17, 1957. (Docket No. 17, Calendar No. 47,252.) Decided March 5, 1958.

Action by Gull Lake Bible Conference Association, a Michigan ecclesiastical corporation, against the Township of Ross to recover taxes paid under protest. Judgment for plaintiff for major portions claimed. Defendant appeals. Affirmed.

*Morris & Culver* (*David Morris*, of counsel), for plaintiff.

*Smith & Bauckham* (*John H. Bauckham* and *Farrell, Folz, Paulson & Palmer* and *Richard H. Paulson*, of counsel), for defendant.

BLACK, J.   Gull Lake Bible Conference Association, plaintiff in this suit to recover taxes paid under statutory protest, was found in the trial court to be a charitable institution within definitive scope of section 7 of the general property tax act (CLS 1956, § 211.7 [Stat Ann 1955 Cum Supp § 7.7]).   Its contention that the defendant township illegally and in violation of said section 7 assessed its realty holdings—situated in the "Midland Park area" adjacent to Kalamazoo county's Gull Lake—was upheld in part and denied in part by the trial judge.   The defendant township appeals.   The plaintiff association does not.

The case was tried to the court without a jury, Hon. Lucien F. Sweet, circuit judge, presiding. Judge Sweet prepared and filed an opinion which so well covers the case and portrays proper conclusion thereon as to impel adoption of the material and now quoted portions thereof.   Such portions are presented to the profession as follows:

"The plaintiff corporation filed its articles of association on August 26, 1920, under the provisions of PA 1897, No 209, as amended.*   The purpose or purposes for which plaintiff corporation was formed are stated in article 2 of its articles of association (plaintiff's exhibit 1) as follows:

"'To promote and conduct gatherings at all seasons of the year for the study of the Bible and for inspirational and evangelistic addresses.'

"Plaintiff carries on its program through the summer months and its activities are centered around a tabernacle and youth chapel located in Midland Park on land which the defendant concedes is exempt from taxation and upon which defendant levies no taxes. In addition to this property the plaintiff owns other property in the Midland Park area, some of which is adjacent to the tabernacle property, and all of which is in close proximity thereto, and it is upon this

---

* Then in force.  Repealed by PA 1921, No 84.—REPORTER.

property that the taxes in question were levied and. collected.

"Plaintiff's exhibit 5 is a copy of the plat of Midland Park and the plat of Midland Park Annex, and the various lots and parcels owned by plaintiff are shown thereon in different colors, each color depicting a certain use. Upon those lots and parcels colored in red is located an old hotel building which is used exclusively for the housing of employees of the plaintiff during the period of their employment and the operation of the summer program. On a parcel fronting upon the lake and bay are located a fellowship center building, picnic area, boat docks, bath house, bathing beach, playground, and horseshoe and badminton courts.

"The lots colored in blue are used by plaintiff for the parking of automobiles of the persons making use of plaintiff's other facilities. ·

"The areas colored in green consist of a trailer camp site for persons attending the conference and living in trailers, and a public gravel pit.

"The lots colored brown are vacant lots or lots upon which there are cottages that are rented to persons attending the conference.

"The types of accommodations, services, recreation and religious programs offered by plaintiff to those attending its conference and making use of the property here involved are graphically and rather fully set forth in a brochure prepared and circulated by plaintiff for its 1956 season and received in evidence as part of plaintiff's exhibit 6. This court is satisfied that this exhibit accurately describes and portrays the facilities and activities of plaintiff and reference thereto as specifically made.

"Plaintiff contends that all of its property is exempt from taxation under the provisions of CLS 1956, § 211.7 [Stat Ann 1955 Cum Supp § 7.7], which reads, in part, as follows:

" 'Section 7. The following property shall be exempt from taxation: *  *  * .'

" 'Fourth, Such real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions and memorial homes of World War veterans incorporated under the laws of this State with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated.  *  *  *

" 'Fifth, All houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and also any parsonage owned by any religious society of this State and occupied as such.'

"Under the proofs offered at the trial it does not appear that the buildings or any of them located upon the land here in question can be construed to come within the phrase 'all houses of public worship' set forth in the fifth paragraph of section 7, nor could any such building be construed to be a parsonage as that term is used in that section. If plaintiff is to prevail, it must be by benefit of the provisions of the fourth paragraph of section 7.

"In the case of *Engineering Society of Detroit* v. *City of Detroit,* 308 Mich 539, 550, the Supreme Court set forth the tests that a claimant must meet to come within the provisions of the statutory exemption as follows:

" '(1) The real estate must be owned and occupied by the exemption claimant;

" '(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

" '(3) The claimant must have been incorporated under the laws of this State;

" '(4) The exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes for which it was incorporated.'

"There is no dispute that plaintiff owns and occupies the property here involved, and that it is a non-

profit corporation organized under the Michigan statute. This leaves for this court the determination of 2 questions, namely, is the plaintiff a charitable institution, and is the property upon which the taxes were levied by the defendant occupied by the plaintiff solely for the purposes for which it was incorporated?  *  *  *

"The plaintiff corporation was organized as a nonprofit corporation. The proofs show conclusively that it is not operated for profit. It has no stockholders. Aside from modest salaries paid to necessary employees, no individual receives any pecuniary benefit from its operation. It practices no discrimination as to race, creed or color. Having in mind the purpose for which it was formed as set forth in article 2 of its articles of association, the conclusion is inescapable that it is a charitable organization and such is the decision of this court.

"The remaining question to be decided, therefore, is whether the property here involved is occupied by the plaintiff solely for the purposes for which it was incorporated. Again we must refer to the rule appearing in 34 ALR 634, at page 635, and set forth in *Auditor General* v. *R. B. Smith Memorial Hospital Association,* 293 Mich 36, 39, wherein it is said:

" 'In determining whether the property is being devoted to charitable purposes within the meaning of the statute, the rule that tax exemptions are to be construed strictly is generally applied, with the result that, in the absence of a specific charter or statutory provision, no property owned by a charitable institution, but held as a source of income, can escape taxation, although the fact that a charge is made for benefits conferred, against those who are able to pay, in no way detracts from the charitable character of an organization.'

"In applying this rule we must determine whether the plaintiff holds the property in question as a source of income. It is true that the plaintiff re-

ceives income from the use which it makes of the
property and the manner in which it occupies the
property by reason of the charges which it makes to
the persons attending the conference and using the
facilities offered and provided by plaintiff.   How-
ever, in determining the true purpose of the plaintiff
for owning and maintaining the property we must
not overlook, but rather be largely governed by the
purposes set forth in its articles for its incorpora-
tion.

"On reference thereto we find that it is not only
the purpose of the plaintiff to conduct gatherings for
the study of the Bible, et cetera, but it is also its
purpose to promote such gatherings.   Looking at
the situation in the light of this latter purpose, it
may be logically concluded that in order to obtain
satisfactory attendance to its conference, plaintiff
found it advisable and necessary to provide those
attending with living accommodations, recreational
facilities and all of the other services offered by
plaintiff and made possible through the use and oc-
cupancy of the land in question by plaintiff in the
manner in which they do use and occupy such land.
The charges made for such services and facilities
approximate the cost thereof to plaintiff, and the in-
come derived therefrom should and does not, in the
opinion of this court, detract from the charitable
character of the plaintiff organization."

As to the bulk of taxes paid by plaintiff under pro-
test, judgment in its favor entered accordingly.   As
to remaining protested taxes assessed against cer-
tain nearby vacant lots and grocery-store premises
owned by plaintiff, judgment passed for defendant.
Since the plaintiff has not appealed, we have elim-
inated from reviewable consideration taxes as to
which plaintiff was denied judgment.   This explains
present deletion, from Judge Sweet's opinion, of that

which he had to say regarding the taxable status of such vacant lots and store premises.

Affirmed. No costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.