MICHIGAN CHRISTIAN CAMPUS MINISTRIES, INC v CITY OF
MOUNT PLEASANT

Docket No. 49022. Submitted June 8, 1981, at Lansing.—Decided
November 2, 1981. Leave to appeal applied for.

Michigan Christian Campus Ministries, Inc., a nonprofit corpora-
tion incorporated in Michigan, owns a building in the City of
Mount Pleasant which is operated under the direction of an
ordained Church of Christ minister. While the building is used
for religious counseling, fellowship (group singing, prayer and
Bible study), religious teaching, sermons and sacraments, the
building is also used to house ten Central Michigan University
students who are selected by the campus minister and pay a
nonmandatory monthly fee for these quarters. In 1977, the City
of Mount Pleasant revoked this property's exemption from *ad
valorem* real property taxes. Campus Ministries filed a petition
in the Michigan Tax Tribunal. The Tax Tribunal determined
that the property was not an exempt house of public worship,
because the principal function of the property was residential
with the other uses being ancillary and that, because of the
selective availability of the residential facilities, the property
was not exempt under the charitable use provision of the
general property tax law. Petitioner appeals. *Held:*

1. The determination by the Tax Tribunal that the principal
use of the property in question was to house the students with
the other uses being ancillary to that principal use was within
the scope of the evidence presented. Since it cannot be said that
the Tax Tribunal committed an error of law or adopted wrong

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 820.
[2] 71 Am Jur 2d, State and Local Taxation §§ 326-331.
[3] 71 Am Jur 2d, State and Local Taxation § 369.
[4] 71 Am Jur 2d, State and Local Taxation § 378.
Property used by personnel as living quarters or for recreation
purposes as within contemplation of tax exemptions extended to
property of religious, educational, charitable, or hospital orga-
nizations. 15 ALR2d 1064.
[5, 7] 71 Am Jur 2d, State and Local Taxation §§ 362, 368.
[6] 71 Am Jur 2d, State and Local Taxation § 362.

principles, and there is no allegation of fraud, the determination of the Tax Tribunal must be affirmed. The principal use being for a purpose other than public worship, the property is not exempt as a house of public worship. Neither is the property an exempt parsonage, since to be considered to be a parsonage the property must be occupied by an ordained minister.

2. While the advancement of religion may come within the definition of "charity" as used in the exemption provisions of the general property tax law, in order to qualify for the charitable exemption the organization must not only be religiously oriented but also must confer a benefit upon society in general. That benefit must be conferred upon the public without regard to race, color or creed. Since the housing here was provided to a selected group of students of a particular religious sect rather than society in general, the Tax Tribunal properly held that the principal use of the property, the housing of the students, was not a charitable activity justifying exemption from taxation under the charitable use provision of the general property tax law.

Affirmed.

1. TAXATION — TAX TRIBUNAL — FINDINGS OF FACT — APPEAL.

The factual determinations of the Michigan Tax Tribunal are binding on the Court of Appeals; where no fraud is alleged, the Court's review on appeal is limited to determining whether the Tax Tribunal committed an error of law or adopted a wrong principle (Const 1963, art 6, § 28).

2. TAXATION — JUDICIAL CONSTRUCTION — EXEMPTIONS — STATUTES.

Statutes providing exemptions from taxation are to be strictly construed in favor of the taxing unit.

3. TAXATION — TAX TRIBUNAL — FINDINGS OF FACT — RELIGIOUS CORPORATIONS.

A determination by the Michigan Tax Tribunal that the primary function of a house owned by a religious corporation is to provide living quarters to selected college students, with the use of such house as a house of worship being ancillary, where there is evidence that such house was used for both purposes constitutes neither an error of law nor adoption of wrong principles by the Tax Tribunal; accordingly, such determination will not be disturbed by the Court of Appeals on appeal.

4. TAXATION — PROPERTY TAXES — EXEMPTIONS — RELIGIOUS CORPORATIONS — PARSONAGES.

A house owned by a religious corporation and occupied by per-

sons other than by an ordained minister is not a parsonage which may be exempt from taxation (MCL 211.7; MSA 7.7).

5. TAXATION — PROPERTY TAXES — EXEMPTIONS — CHARITABLE CORPORATIONS.

A claimant of an exemption from taxation of real estate under the charitable and benevolent institution provision of the general property tax law must show that: (1) the real estate is owned and occupied by the claimant, (2) the claimant must be a library, benevolent, charitable, educational or scientific institution, (3) the claimant must have been incorporated in Michigan, and (4) the buildings and other property on the property sought to be exempt from taxation must be occupied by the claimant for the purposes for which it was incorporated (MCL 211.7; MSA 7.7).

6. TAXATION — PROPERTY TAXES — EXEMPTIONS — CHARITY.

The advancement of religion may come within the definition of "charity" for the purpose of the exemption from taxation provision of the general property tax law; a religious organization claiming a charitable exemption must confer a benefit upon society in general without regard to race, color or creed (MCL 211.7; MSA 7.7).

7. TAXATION — PROPERTY TAXES — EXEMPTIONS — RELIGIOUS CORPORATIONS.

A house owned by a religious corporation and used primarily to house selected members of a particular sect is not exempt from taxation under the charitable exemption provision of the general tax law, since the primary use confers no benefit on the public in general (MCL 211.7; MSA 7.7).

*Lynch, Gallagher, Lynch, Shirley, Martineau & Campbell,* for petitioner.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *Frederick M. Baker, Jr.* and *John A. Yeager),* for respondent.

Before: DANHOF, C.J., and M. F. CAVANAGH and D. R. FREEMAN,* JJ.

DANHOF, C.J. Petitioner appeals from a decision of the Michigan Tax Tribunal, which held that

* Circuit judge, sitting on the Court of Appeals by assignment.

petitioner's property was not exempt from *ad valo-rem* real property taxes assessed for the years 1977 through 1980.

The subject of these proceedings is a building located near Central Michigan University in Mount Pleasant which is owned by petitioner Michigan Christian Campus Ministries, Inc., a nonprofit corporation. The corporation's purposes are stated as follows in the articles of incorporation:

"To provide each campus community with a stimulus for spiritual growth through creative Bible study, interpersonal relationships, counseling resources and the opportunity for selected students to live together in a Christian atmosphere."

The property is one of several campus houses operated by petitioner in Michigan college communities. It is a three-story wood frame structure containing eight bedrooms, two bathrooms, two meeting rooms, an office, a kitchen and a dining room. The campus house is under the direction of an ordained Church of Christ minister, who uses the office to conduct religious counseling and for administrative duties. He does not live in the house.

Ten Central Michigan University students reside in the house. They are selected by the campus minister and pay a fee of $80 per month to live in the house. The fee is nonmandatory and is based upon ability to pay; however, the record does not indicate whether or not students had been allowed to reside in the house free of charge during the years in question. Financial support for the campus house is also provided through donations from the Church of Christ and individuals.

In addition to serving as a residence for selected

students, the campus house is utilized for other purposes, including the religious counseling previously mentioned, fellowship (group singing, prayer and Bible study), religious teaching, sermons and sacraments. The weekly Sunday evening activities are attended by a large number of students. The house residents assist the campus minister in conducting the services and activities. Their presence enables the house to remain open 24 hours a day for students desiring the use of facilities for prayer, study or counseling.

The house was purchased by petitioner in 1975. At that time the assessor determined it to be tax exempt on the basis that it was used by a religious organization-church for offices, meeting rooms for prayer and Bible study, and living quarters for the campus minister and selected student leaders. The exemption was revoked in 1977, and petitioner instituted proceedings in the Tax Tribunal claiming exemption from the general property tax as a charitable and/or benevolent association or as a house of public worship. The Tax Tribunal ruled that the exemptions did not apply and the present appeal was taken.

The applicable standard of review is the following:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28.

See MCL 205.753(1); MSA 7.650(53)(1).

No fraud is alleged in the instant case and we are thus limited to considering whether the Tax Tribunal committed an error of law or adopted a wrong principle. The Tax Tribunal's factual deter-

minations are binding. *Circle Pines Center v Orangeville Twp,* 103 Mich App 593, 597; 302 NW2d 917 (1981).

Furthermore, because tax exemption is the antithesis of tax equality, we must give way to the rule that exemption statutes are to be strictly construed in favor of the taxing unit. *Michigan Baptist Homes & Development Co v Ann Arbor,* 396 Mich 660, 670; 242 NW2d 749 (1976).

I. *Exemption as a house of public worship*

Petitioner's first contention is that the campus house is exempt as a house of public worship. For the tax years in question, the controlling statute exempted the following:

"Fifth, All houses of public worship, with the land on which they stand, the furniture therein and all rights in the pews, and also any parsonage owned by any religious society of this state and occupied as such. Houses of public worship includes buildings or other facilities owned by a religious society and used exclusively for religious services or for teaching the religious truths and beliefs of the society." MCL 211.7; MSA 7.7.

The exemption statute was amended by 1980 PA 142 to require that the use of property for religious services or teaching be the predominant rather than the exclusive use. MCL 211.7(s); MSA 7.7(4p). This amendment prevents a church from losing its tax-exempt status merely because it is used for social purposes incidental to its primary function.

In the present case, the Tax Tribunal, relying on *National Music Camp v Green Lake Twp,* 76 Mich App 608; 257 NW2d 188 (1977), concluded that the substance of the campus house arrangement was to provide private living quarters for selected students. The exemption was denied despite the fact

that the house was used for functions akin to those of a house of worship, because such functions were determined to be ancillary to the residential function rather than vice versa. We discern no error of law or adoption of wrong principles by the Tax Tribunal. The fact that the majority of the rooms in the house are devoted to living space for the residents supports the Tax Tribunal's analysis. Although religious services are conducted at times, use of the property as a residence for college students is continuous.

Furthermore, the campus house cannot be viewed as a parsonage because the ordained minister is not a resident. *St Matthew Lutheran Church v Delhi Twp,* 76 Mich App 597; 257 NW2d 183 (1977).

II. *Exemption as a charitable or benevolent institution*

Petitioner also relies on the exemption for real estate owned and occupied by nonprofit benevolent or charitable institutions. For the years in question, the controlling statute exempted:

"Fourth, such real estate or personal property as shall be owned and occupied by nonprofit * * * benevolent, charitable, * * * institutions * * * incorporated under the laws of this state with the buildings and other property thereon while occupied by them solely for the purposes for which they were incorporated." MCL 211.7; MSA 7.7.

In *Engineering Society of Detroit v Detroit,* 308 Mich 539, 550; 14 NW2d 79 (1944), the Supreme Court stated that to qualify for an exemption under this section the petitioner must show:

"(1) The real estate must be owned and occupied by the exemption claimant;

"(2) The exemption claimant must be a library, benevolent, charitable, educational or scientific institution;

"(3) The claimant must have been incorporated under the laws of this State;

"(4) The exemption exists only when the buildings and other property thereon are occupied by the claimant solely for the purposes of which it was incorporated."

It is undisputed that petitioner has satisfied parts (1) and (3) of this test. The question on appeal is whether the tribunal erred in holding that petitioner did not qualify under parts (2) and (4) of this test. In determining whether parts (2) and (4) of the *Engineering Society* test have been met, we must address the question whether the exemption claimant could be characterized as a nonprofit benevolent or charitable institution whose premises are used *solely* for such purposes. *Ladies Literary Club v Grand Rapids,* 409 Mich 748, 754; 298 NW2d 422 (1980). An institution need not fit neatly into one of the statutory categories; it may be involved in two or more tax-exempt areas. *Id.,* 753.

The advancement of religion may come within the definition of "charity". See *Gull Lake Bible Conference Ass'n v Ross Twp,* 351 Mich 269; 88 NW2d 264 (1958). In *Asher Student Foundation v East Lansing,* 88 Mich App 568, 572; 278 NW2d 675 (1979), *lv den* 406 Mich 999 (1979), this Court defined charity as a gift

" 'for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life or by erecting or maintain-

ing public buildings or works or otherwise lessening the burdens of government.' " (Emphasis in *Asher.)*

In order to qualify for the charitable exemption, the organization must not only be religiously oriented, it must also confer a benefit upon society in general.

In *Auditor General v R B Smith Memorial Hospital Ass'n,* 293 Mich 36, 38-39; 291 NW 213 (1940), the Court indicated that nondiscrimination as to race, color or creed in the conferral of benefits was necessary for an organization to be considered charitable or benevolent within the meaning of the tax-exemption statutes. In *Michigan Baptist Homes & Development Co, supra,* 671, the Supreme Court stated: "Basically, it may be said that charity or benevolence benefit the general public without restriction."

In the present case the Tax Tribunal found that the primary purpose of the campus house is to provide living quarters for selected students. The Tax Tribunal determined that this selectivity did not give rise to conferral of general public benefit necessary to sustain a charitable exemption. The fact that the campus house had an open-door policy to permit access to its facilities was viewed as an incidental function because petitioner had failed to show that the general public was aware that the services provided by the campus house were available. The Tax Tribunal also determined that the articles of incorporation did not support charitable intentions and quoted with approval the following statement from respondent's brief:

"Petitioner's own articles of incorporation recite that selective students are to have the opportunity to live together in a Christian atmosphere. The petitioner thus

limits its charity first to only Christians, next only to students, and finally only to selected students."

The Tax Tribunal also found that petitioner did not qualify for an exemption as a benevolent society, because petitioner's organization was not motivated solely by benevolence.

In *Asher Student Foundation, supra,* this Court affirmed the Tax Tribunal's refusal to grant a charitable exemption to Asher House, a building located in East Lansing which housed approximately 90 Michigan State University students of the Christian Science faith. The building contained living quarters for men and women, dining, kitchen and laundry facilities, lounges, administrative offices, libraries containing Christian Science literature, and two rooms devoted to the study of Christian Science and prayerful meditation. Residents of the house paid fees comparable to those paid to the university for dormitory rooms. The Court concluded that the purpose of the foundation, to provide living quarters for certain college students of the Christian Science faith, was not sufficiently beneficial to the general public to qualify the foundation as a charitable institution.

While there are distinctions between the present case and *Asher Student Foundation, supra,* it is noteworthy that in both cases much of the building space was devoted to the residential function. Although there is no indication that the fees charged to the campus house residents were equivalent to those charged for university housing, generally fees were paid by the residents. Viewing the residential function alone, it can be said that the campus house benefited a few select members of a particular sect rather than society in general. The fact that other uses of the house could be considered charitable would not justify an exemp-

tion where the primary use was not charitable. The Tax Tribunal correctly concluded that petitioner is not entitled to a tax exemption as a charitable institution.

We also agree with the Tax Tribunal that petitioner is not entitled to a tax exemption as a benevolent institution.

In light of the above discussion, we conclude that the Tax Tribunal did not commit an error of law or adopt a wrong principle in denying the petitioner tax-exempt status for the campus house property under the exemptions for charitable or benevolent institutions or for houses of public worship.

Affirmed. No costs, a public question.