*In re* PETITIONS OF AUDITOR GENERAL.

SAGINAW HEBREW BENEVOLENT SOCIETY *v.* BUDD.

1. TAXATION—REJECTION—SUBSEQUENT EXEMPTION.
   A rejection of taxes assessed under the general property tax law may not be made if the property was subject to taxation when the original assessment was made, not merely because it thereafter became entitled to exemption (CL 1948, § 211.96).

2. SAME—REASSESSMENT—SUBSEQUENT EXEMPTION.
   Reassessment of property for taxes which had been delinquent and rejected was proper, where the property was not exempt at the time the original assessment was made but became exempt at a later date when plaintiff society acquired it for cemetery purposes (CL 1948, § 211.96).

3. SAME — EXEMPTION — CEMETERIES — FUTURE USE — CARETAKER'S SHACK.
   Land acquired by a benevolent society to take care of future needs of its adjoining cemetery was entitled to exemption from taxation, notwithstanding no actual ·burials had yet occurred thereon and incidental use of part of it as site for caretaker's shack the use of which was a part of his compensation (CL 1948, § 211.7).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 51 Am Jur, Taxation § 537.
[2] 51 Am Jur, Taxation § 792.
[3, 5] 51 Am Jur, Taxation § 646.
[3, 5] What is a cemetery within constitutional or statutory tax exemption. 122 ALR 901.
[5] 51 Am Jur, Taxation § 645.
[6] Generally as to notices of sale for delinquent taxes, see 51 Am Jur, Taxation § 1033 *et seq.*
[8] 13 Am Jur, Corporations §§ 1305, 1315, 1316.
[9] 13 Am Jur, Corporations § 1347 *et seq.*
[9] Powers and property rights of corporation after expiration or forfeiture of its charter. 47 ALR 1288; 97 ALR 477.

4. SAME—EXEMPTION—CEMETERIES—STATUTES.

> Statute exempting certain property of cemetery corporations does not apply to benevolent society not organized under such statute (CL 1948, § 456.108).

5. SAME—EXEMPTIONS—BURIAL GROUNDS—CONSTRUCTION OF STATUTES.

> Provision of statute exempting burial grounds from taxation should be liberally construed so as to include lands held and intended for future use for burial purposes (CL 1948, § 211.7).

6. SAME—EXEMPTIONS—NOTICE—ILLEGAL SALES.

> Provisions of statute relative to notice of sale for delinquent taxes upon legal publication of petition for sale does not require owners of land exempt from taxation to peruse the publication to discover whether an unlawful tax assessment has been made upon such property and an illegal sale thereof decreed (CL 1948, §§ 211.66, 211.70).

7. DEEDS—NAME OF GRANTEE.

> Fact that term "association," rather than "society," was used in name of plaintiff benevolent society in deed under which it was grantee *held,* an inconsequential error.

8. CORPORATIONS—DEFAULT—PROPERTY.

> A corporation which is in default in filing its annual reports and payment of fees is not inhibited from the acquisition of real estate by reason of such statutes (CL 1948, § 450.87).

9. SAME—VOID CHARTER—CONTINUANCE OF EXISTENCE—CONSERVATION OF PROPERTY.

> A corporation does not cease to exist upon its charter becoming absolutely void as it still continues a body corporate at least for the purpose of holding possession of its property and conserving and protecting it until due proceedings are had to cure the default or wind up its affairs in an orderly manner (CL 1948, § 450.87).

10. PLEADING—AFFIRMATIVE DEFENSE—DEFAULTED CORPORATION.

> The defense that a plaintiff corporation could not maintain an action because of its failure to file annual reports is an affirmative one which must be pleaded (CL 1948, § 450.87).

11. COSTS—NEITHER PARTY PREVAILING IN FULL.

> No costs are allowed on an appeal, where neither party has prevailed in full.

SHARPE, J., dissenting in part.

Appeal from Saginaw; O'Neill (James E.), J. Submitted January 11, 1952. (Docket Nos. 38, 39, Calendar Nos. 45,281, 45,282.) Decided June 2, 1952.

The Saginaw Hebrew Benevolent Society filed its petitions to set aside tax sales and to require Harry R. Budd and wife to execute deeds. Decree for plaintiff. Defendants Budd appeal. Reversed in part and affirmed in part.

*Devere Kostoff,* for plaintiff.

*Ira W. Butterfield,* for defendants Budd.

DETHMERS, J. Plaintiff, the Saginaw Hebrew Benevolent Society, was incorporated in 1898 as a nonprofit corporation for a term of 30 years, and in 1931 its charter was voided for failure to file its annual reports and pay its annual fees. From the beginning and until the date of hearing it has owned and maintained a cemetery. Adjacent thereto is the 150- by 120-foot parcel of land here in dispute. In 1934, it was conveyed by the record title owner, by warranty deed, to the Saginaw Hebrew Benevolent *Association.* Defendants Harry R. Budd and Blanche L. Budd secured a deed to the south 60 feet thereof from the State land office board on April 15, 1941, after it had been bid in by the State at the 1939 tax sale for nonpayment of 1936 taxes. They bought the north 90 feet at the 1940 tax sale decreed for delinquent 1933 taxes, rejected, and reassessed in 1936, and 1936 and 1937 taxes. Plaintiff petitioned the court to set aside the 2 tax sales and declare the assessments upon which they were based null and void for the reason that, when made, the land was cemetery property, exempt from taxation. From an order amending the decree for sale, as prayed by plaintiff, defendants appeal.

As relates to the north 90 feet of the land in dispute the trial court held, in effect, that the reassessment in 1936 of 1933 taxes must be treated as a 1936 tax imposed on the land after it became cemetery property, exempt from taxation, and that, therefore, the reassessment was void. The court based its decision in this respect on the provisions of CL 1948, § 211.96 (Stat Ann 1950 Rev § 7.149). A plain reading of the statute makes it clear that rejection may occur if the property was not subject to taxation when the original assessment was made, not merely because it thereafter became entitled to exemption. Proper inquiry by plaintiff at the time of its purchase in 1934 would have disclosed the true status of the 1933 assessment, made when the property was not exempt, as in default, returned, or rejected. It could have protected itself accordingly. The amount of the tax was a subsisting lien at that time, subject to possible future rejection, for whatever reason, and reassessment. The exception, in the statute, from the requirement for reassessment after rejection clearly applies only, as expressly stated, when lands were not subject to taxation "at the time of the assessment for such taxes." It is significant that the statute does not say "at the time of the *re*assessment for such taxes." The 1936 reassessment of 1933 taxes was not void. As relates to the north 90 feet of the disputed property, therefore, the order of the trial court is reversed and plaintiff's petition in relation thereto dismissed.

The tax assessments upon which the sale of the south 60 feet was based were made after the 1934 conveyance to plaintiff. Consequently, a different situation is presented in relation thereto. The defendants say that, nevertheless, the property was not entitled to exemption under CL 1948, § 211.7 (Stat Ann § 7.7) because it was not "used exclusively as burial grounds." While actual burials had not yet

occurred on the disputed land at time of trial, plaintiff had purchased it to take care of the future needs of the cemetery. Situated on its was a shack, the use of which was permitted by plaintiff to the cemetery caretaker as part of his compensation. While the statute exempting certain property of cemetery corporations (CL 1948, § 456.108 [Stat Ann § 21.878]) does not apply to plaintiff because it was not organized as a cemetery corporation and although that statute is worded somewhat differently than CL 1948, § 211.7 (Stat Ann § 7.7), applicable here, nevertheless we deem the legislative intent and purpose expressed in the 2 sections to be of like import. We construed the former section in the case of *In re Petition of Auditor General,* 294 Mich 221, saying:

"We are inclined toward liberality in construing this exemption because of the expressed policy we have 'in common with the universal sentiment of mankind, to preserve and maintain the burial places of the dead.' *Avery* v. *Forest Lawn Cemetery Co.,* 127 Mich 125; *Woodmere Cemetery Association* v. *City of Detroit,* 192 Mich 553; *White Chapel Memorial Association* v. *Willson,* 260 Mich 238. The amount of acreage set aside for cemetery purposes did not exceed the legal limit. The record does not show that there was ever an abandonment for cemetery purposes of the land exempted by the decree. The casual use of the property by the indigent for farming purposes without consideration is not to be regarded as an abandonment of the original object. Within the acreage limit of the statute, ample provision may be made for the needs of the future, and the reserve will be entitled to protection from assessments."

Nowhere does the legislative intent appear to exempt from taxation only the portions of cemeteries actually constituting graves and to subject the re-

mainder to taxation. It is clearly contemplated that the exemption shall apply to lots intended for future burials. We think the lands here in dispute come within the clear intent of the exempting statute.

Next, defendants urge that under the limitations of CL 1948, § 211.70 (Stat Ann § 7.115), plaintiff's petition must fall because not brought within 1 year after plaintiff had notice of the sale. This contention rests for its validity upon defendants' theory that plaintiff must be held, under the provisions of CL 1948, § 211.66 (Stat Ann § 7.111), to have had notice of the sale when publication of the petition and order therefor occurred. We do not read the cited statute to mean that owners of land exempt from taxation are bound, at their peril, to peruse such publications to discover whether an unlawful tax assessment has been made upon such property and an illegal sale thereof decreed. The publications were not designed for that purpose.

We consider the word "association" instead of "society" in the conveyance to plaintiff an inconsequential error and note that no mention or complaint is made thereof in defendants' answer. The conveyance was clearly intended to be to the plaintiff corporation which at that time stood in default as relates to filing of annual reports and payment of fees. Defendants urge that that default voids the deed to plaintiff and stands as a barrier to its right to invoke the aid of the courts in support thereof. The statute in effect when plaintiff acquired the land (CL 1948, § 450.87 [Stat Ann § 21.87]) did not inhibit the acquisition of real estate by a corporation in that status. This is not an action or suit, prohibited by the statute, upon a contract entered into by the corporation while it was in default. In *John J. Gamalski Hardware, Inc.,* v. *Wayne County Sheriff,* 298 Mich 662, 671 (136 ALR 1155), we said:

"There is no question in the instant case but that plaintiff's default for failure to comply with the provisions of the general corporation act has rendered its charter void. However, we have held a corporation does not cease to exist upon its charter becoming absolutely void; that it still continues a body corporate and remains a legally existing corporation for certain purposes. One of said purposes being, as we have inferentially held, and now hold, is to hold and have possession of its property and to conserve same, until due proceedings are had, either to cure the default which caused the loss of its charter, or to wind up its affairs in an orderly manner. There are many things it cannot do by reason of the prohibition of the statutes; but to hold, protect and repossess its property is not one of the things it cannot do by reason of such prohibitory provisions. It would be doing a great injustice to the right to own and hold property for us to say that the courts of this State are closed to a defaulting corporation to continue the possession of its property and to conserve the same."

By the same token, plaintiff may protect real estate purchased by it while in default. In *Cook* v. *Casualty Association of America,* 246 Mich 278, it was held, in a suit at law by a corporation, that the defense that it could not maintain the action because of its failure to file annual reports was an affirmative one which must be pleaded. We think that rule applicable here. The defense, if available to defendants, which we doubt, was not pleaded.

As relates to the south 60 feet of the disputed land we hold the trial court's order setting aside the tax sale correct and it is hereby affirmed.

A decree may enter in this Court in accord herewith. No costs, neither party having prevailed in full.

NORTH, C. J., and BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred with DETHMERS, J.

SHARPE, J. (*dissenting*). I am in accord with the reasoning and result in Mr. Justice DETHMERS' opinion insofar as the north 90 feet of the property in question is involved. I am not in accord with his conclusions relative to the south 60 feet. This property was purchased by plaintiffs in 1934, and has never been used as a cemetery. There never has been a burial in it. The property in question has a house on it, and was used as a home for the caretaker. From 1934 to 1937 the house was rented for $12 per month.

There are 2 tax-exemption statutes relating to cemeteries. The first enactment on this subject was PA 1869, No 12, § 8 (CL 1948, § 456.108 [Stat Ann § 21.878]), which reads as follows:

"Sec. 8. All the lands of said corporation enclosed and set apart for cemetery purposes, and all rights of burial therein shall be wholly exempt from taxation of any kind whatsoever."

It is to be noted that section 8 of the above act has never been changed. One of the purposes of the act was to encourage the establishment of rural cemeteries. It was under the above act that an exemption was claimed in *Re Petition of Auditor General,* 294 Mich 221. We there held that the casual use of the property by the indigent for farming purposes without consideration is not to be recognized as an abandonment of the original object. The above case did not involve a commercial use of the property.

The other tax exemption statute was enacted at a much later date. It is a part of the general property tax law, with a subdivision heading "Real Es-

tate Exemptions." It reads as follows (CL 1948, § 211.7 [Stat Ann § 7.7]):

"All lands used exclusively as burial grounds, and the rights of burial therein, and the tombs and monuments therein, while reserved and in use for the purpose."

Under the above statute cemeteries are tax exempt when used exclusively as burial grounds. It is a general rule that laws exempting property from taxation are in derogation of equal rights and must be strictly construed. See *Woodmere Cemetery Association* v. *City of Detroit*, 192 Mich 553. In *St. Joseph's Church* v. *City of Detroit*, 189 Mich 408, we said:

"It is a cardinal rule that exemption statutes—unlike homestead statutes—should receive a strict construction. Cooley on Taxation (2d ed), p 205. Statutes providing for exemption from taxation must be understood as exempting only as therein specified.

"A grant of exemption is never presumed; on the contrary, in all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption. See 37 Cyc, pp 891, 892, and cases cited, including *East Saginaw Manfg. Co.* v. *City of East Saginaw*, 19 Mich 259 (2 Am Rep 82); *Attorney General* v. *Common Council of Detroit*, 113 Mich 388."

I find no reason to determine that the intent and purpose of both exemption statutes are of like import. I am of the opinion that in order for plaintiffs to be granted a tax exemption they must affirmatively show that the land is used exclusively as burial grounds. Where property is used commercially and repugnant to its use for cemetery purposes, such property is not entitled to a tax exemption. The tax

sale of March 6, 1939, was valid.   The decree of the trial court should be reversed, with costs to defendant.